## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

**CAITLIN SCHULTZE**, an individual,

    Plaintiff,

v.

**CITY OF HOBBS FIRE DEPARTMENT**, a political subdivision of the City of Hobbs and State of New Mexico; **CITY OF HOBBS**, a New Mexico municipality and political subdivision of the State of New Mexico; **BARRY YOUNG**, Chief of Hobbs Fire Department; **BOARD OF COMMISSIONERS OF THE CITY OF HOBBS**, a political subdivision of the State of New Mexico; **SAM COBB**, Mayor of the City of Hobbs, New Mexico; **MANNY GOMEZ**, City Manager of the City of Hobbs, New Mexico; **RYAN HERRERA**, an employee of the Fire Department of the City of Hobbs, New Mexico; **CHRIS DAVIS**, an employee of the Fire Department of the City of Hobbs, New Mexico; **JOHN DOES I-X; JANE DOES I-X; BLACKS AND WHITE ENTITIES I-X**,

    Defendants.

No. 2:22-cv-157
*Jury Trial Demanded*

## COMPLAINT FOR CIVIL RIGHTS VIOLATION AND HOSTILE WORK ENVIRONMENT

COMES NOW Plaintiff Caitlin Schultze, by and through her attorney of record, Joseph M. Zebas, ZEBAS LAW FIRM, L.L.C., for her complaint against the named defendants states as follows:

## INTRODUCTION

1.     Plaintiff files the above-captioned Complaint under Title VII, The Civil Rights Act of 1964 and 1991, as Amended, 42 U.S.C.A 2000E et. Seq., of the Civil Rights Act, and the Equal Employment Opportunity Commission Act.

2.      While employed for the Defendant City of Hobbs Fire Department as a firefighter, Plaintiff Caitlin Schultze was submitted to a hostile environment and was sexually harassed by at least one of her superiors (or firefighter of equal rank) of the Defendant City of Hobbs Fire Department. Plaintiff repeatedly complained to the Defendant City of Hobbs Fire Department, but to no avail.

3.      Plaintiff was further sexually discriminated against due to her gender because she was denied advancement because she is a female.

4.      The events that will be referenced in this complaint are the result of Defendant City of Hobbs Fire Department lack of compliance with labor law which requires that employers actively implement work environments free of sexual harassment and discrimination.

## JURISDICTIONAL ALLEGATIONS

5.      This is a civil rights action for money damages arising under Title VII, The Civil Rights Act of 1964 and 1991, as Amended, 42 U.S.C. §§ Section 2000e-2, 2000e-3.

6.      This is also a civil rights action for money damages arising under the Constitution of the United States.

7.      This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343(4) and venue exists under 28 U.S.C. § 1391.

8.      The events giving rise to this complaint occurred at the Defendants' facilities in Lea County, New Mexico.

9.      Plaintiff Caitlin Schultze has exhausted her administrative remedies as to her claims under Title VII of the Civil Rights Act of 1991, having filed charges with the U.S. Equal Employment Opportunity Commission.

10.    Plaintiff was issued a notice of right to sue letter by the United States Equal Employment Opportunity Commission on or about December 2, 2021, a copy of which is attached here too and made part of this Complaint. (See, Exhibit A.)

## PARTIES

11.    **Plaintiff Caitlin Schultze** ("Plaintiff" hereinafter) is a resident of Hobbs, County of Lea, State of New Mexico. At all times relevant, Plaintiff was an employee of the Defendant City of Hobbs Fire Department, as provided under Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. §§ 2000e, et seq., and applicable case law.

12.    **Defendant City of Hobbs Fire Department (hereinafter "Defendant HFD")** is a New Mexico municipal corporation, political subdivision of the City of Hobbs, New Mexico and State of New Mexico and an entity in the meaning of 42 U.S.C. § 1983, created to "protect and maintain the quality of life [in Hobbs, New Mexico by] protecting the people, their property and rights while providing the best fire suppression, emergency medical response, hazardous materials response, and fire prevention services available."

13.    **Defendant City of Hobbs** (hereinafter "City") is a New Mexico municipal corporation and a political subdivision of the State of New Mexico. Defendant City was responsible for the selection and retention of Defendant HFD firefighters as well as for the training, supervision, and discipline of Defendant HFD firefighters.

14.    **Defendant Barry Young** is the Chief of Defendant HFD and was/is responsible for the hiring, retention, training, supervision, and discipline of subordinate officers, including the Defendants Ryan Herrera and Chris Davis. He is sued in his official and unofficial capacity.

15. **Defendant Board of Commissioners of the City of Hobbs** (hereinafter "Defendant Board of Commissioners") is a seven-member board elected by the citizens of Hobbs, New Mexico, consisting of the Mayor and six City Commissioners to oversee the operation of City of Hobbs Fire Department as created and established by the Hobbs Charter Commission for the City of Hobbs effective April 1, 2001.

16. Defendant Board of Commissioners was the employer of Defendant HFD and is responsible for the hiring, retention, supervision, and discipline of subordinate officers, including these Defendants Ryan Herrera and Chris Davis.

17. **Defendant Sam Cobb** is the Mayor of the City and is sued in his official and unofficial capacity.

18. **Defendant Manny Gomez** is the City Manager and former Chief of the Hobbs Fire Department of the City of Hobbs and is sued in his official and unofficial capacity.

19. **Defendant Ryan Herrera** is an employee and Captain in the City of Hobbs Fire Department and is sued in his official capacity only.

20. **Defendant Chris Davis** is an employee and the Battalion Chief in the City of Hobbs Fire Department and is sued in his official capacity only.

21. City of Hobbs Fire Department and the Board of Commissioners of the City of Hobbs, (collectively "Hobbs Defendants") were also in charge of, and responsible for, the enforcement of all policies, procedures, and guidelines within the City and its departments, namely Defendant HFD, and the actions of such employees, agents, and/or departments of Hobbs Defendants. This charge and responsibility included supervision and discipline of employees and administrators including, but not limited to Defendant HFD firefighters.

22.     At the time of the events complained of herein, these Defendants were acting within the course and scope of their agency and/or employment with Defendant HFD and under federal and state law. These Defendants engaged in the wrongful conduct that caused and contributed to the violation of Plaintiff's civil rights. Defendant Board of Commissioners is vicariously liable for these Defendants' wrongful conduct as alleged in this complaint. At all times material hereto, Defendants, and each of them, acted under color of law and are sued in their official capacity.

23.     Defendant Board of Commissioners of the City of Hobbs (hereinafter "City") is a municipality within the State of New Mexico and was the employer of HFD Defendants and are responsible for the hiring, retention, training, supervision, and discipline of subordinate firefighters, including these Defendants. Defendant City was responsible for the selection and retention of HFD firefighters as well as for the training, supervision, and discipline of the above Defendants.

24.     Defendants John Does I-X and Jane Does I-X upon further information and belief, reside in the County of Lea, State of New Mexico. Said Defendants may include, but are not necessarily limited to employees and agents of the Defendant HFD, who participated in the issues causing harm to Plaintiff.

25.     Said Defendants have, upon information and belief, have helped to cause the incidents alleged herein. The true names of John Does I-X and Jane Does I-X are not known but will be provided to this Court as they are learned.

26.     Defendant Black and White Entities I-X are, upon information and belief, entities which operate in and have substantial ties to Lea County, State of New Mexico. Said Defendants have, upon information and belief, helped to cause the incident or accident

alleged herein. The true names of Black and White Entities I-X are not known but will be provided to this Court as they are learned.

## GENERAL ALLEGATIONS

27.   This is an action to vindicate violations of Plaintiff's Civil Rights and redress the unlawful and discriminatory conduct in employment practices of the Defendant HFD.

28.   This jury action seeks redress for all of these Defendants' violations of the laws of the United States in connection with the sexual harassment of Plaintiff. The action specifically seeks to enforce Rights created under Title VII, Civil Rights Act of 1964 ("Title VII") (42 U.S.C. § 2000e, et seq.), prohibiting race and national origin discrimination, sex discrimination, racial and sexual harassment and retaliation in employment based upon sex. This action also seeks to enforce the rights as set forth under the New Mexico Human Rights Act.

29.   Plaintiff seeks declaratory, injunctive and other equitable relief, and compensatory and punitive damages based on Defendants' deprivation of Rights accorded to the Plaintiff under § 1981 of the Civil Rights Act of 1981, as amended by the Civil Rights Acts of 1991, 42 U.S.C. § 1981.

30.   Additionally, Plaintiff seeks declaratory, injunctive, and other equitable relief, and compensatory and punitive damages based on Defendants' discrimination against her in violation of Title VII of the Civil Rights Act of 1964 as amended by the Civil Rights Act of 1991, 42 U.S.C. §§ 2000e, et seq. ("Title VII").

31.   On April 28, 2021, Plaintiff filed a charge of discrimination under the Equal Employment Opportunity Commission (EEOC). Plaintiff received her right to sue letter on December 2, 2021.

32.     At all times material hereto, Plaintiff was employed as a firefighter by the Defendant HFD and worked at Defendant HFD's places of operations: Station One, Station Two, and Station Three in Hobbs, New Mexico.

33.     Plaintiff has served as a firefighter for two [2] year(s) and has attained the rank of firefighter/ EMT.

34.     Plaintiff's salary was paid by Defendant HFD.

35.     At all times material hereto, Plaintiff's work performance was satisfactory or better.

36.     While first employed by the Defendant HFD, Plaintiff was directly supervised by Defendant Ryan Herrera. She also worked under the ultimate supervision of Defendant Barry Young, who is/was Chief of Hobbs Fire Department.

37.     At the time relevant to this complaint, Defendant HFD did not promulgate at the workplace any policy against sexual harassment, nor any discrimination-free workplace policy.

38.     In fact, during the time Plaintiff was employed by Defendant HFD she was not protected by a sexual harassment policy.

39.     According to the Statement of witness Union President Joseph Meyers (hereinafter "Mr. Meyers").

40.     On January 16, 2021 Mr. Meyers was called into a shift to cover for an out-of-town transport. He was to report to Station One to cover as driver for Jimbob Marshall, whom is another driver. Dusty Corley, a firefighter, was also being sent on transport and Plaintiff was brought down from Station Three while the transport was out. While at Station One, a conversation was started between Defendant Ryan Herrera and Plaintiff. Present in the room was Mr. Meyers, Defendant Chris Davis, Defendant Ryan Herrera,

and Plaintiff. Carri Valverde, a Paramedic, and Mark Armijo, a driver engineer, may have been present and additional witnesses in the vicinity at the time of this conversation.

41.     Defendant Ryan Herrera started the conversation by asking how Plaintiff's most recent vacation trip went. Plaintiff was apprehensive to answer, but she stated "it was okay". Defendant Ryan Herrera then went on to ask Plaintiff about her boyfriend and how he was doing. This made Plaintiff extremely uncomfortable to converse about but she responded to his question stating "that the two were not together anymore". Plaintiff chose not to go into further detail regarding the subject matter. Defendant Ryan Herrera then proceeded to pressure Plaintiff for more information regarding her previous relationship. Plaintiff was extremely uncomfortable but did not want to be perceived as rude by her commanding officer out of fear of retaliation so she answered his questions. Plaintiff's response was "something bad had happened and did she not want to talk about it". Again, Defendant Ryan Herrera prying into the issue kept questioning Plaintiff regarding the incident in question. Plaintiff then responded to an emergency service call.

42.     When Plaintiff returned from the emergency service call, Defendant Ryan Herrera again with no concern of Plaintiff's wellbeing continued to pry into the personal life of Plaintiff and ask more questions regarding the incident in question. Plaintiff revealed to Defendant Ryan Herrera that her previous boyfriend in Georgia had been having an affair with two (2) other women.

43.     Defendant Ryan Herrera continued to question Plaintiff regarding her experience in which he presented himself as concerned for Plaintiff, but this would later change.

44.     Plaintiff continued to attend to calls for emergency services. According to Mr. Meyers and unbeknownst to Plaintiff, Defendant Ryan Herrera and Defendant Chris Davis would perform research on company time to seek out information on Plaintiff's ex-boyfriend.

45.     This is an invasive and intrusive action into Plaintiff's life, while not directly hindering, can show the intent behind Defendants Ryan Herrera and Chris Davis' malicious behavior towards Plaintiff.

46.     After Defendant Ryan Herrera and Defendant Chris Davis located Plaintiff's ex-boyfriend through social media sites, they were able to determine that he was an African-American football player for Auburn University.

47.     Defendant Ryan Herrera proceeded to berate and make the following comments after discovering Plaintiff's ex-boyfriend, "I didn't know she liked that big black cock" while making gestures with his forearm to insinuate the size of the gentleman's penis. Defendant Chris Davis would be present and laugh about the comments Defendant Ryan Herrera made.

48.     Defendant Ryan Herrera made those comments while Defendant Chris Davis was present and witnessed the sexual harassment.

49.     At time Mr. Meyers would be brought in on these grotesque jokes by way of questions such as "Meyers, did you know that she liked big cocks?" Defendant Ryan Herrera went as far as locating the address of Plaintiff's former boyfriend and disclosed this to the staff.

50.     According to the statement provided by Plaintiff.

51.   On March 28, 2021, after hazing and sexual-harassment had reached an intolerable level at Hobbs Fire Department, Plaintiff went to her superior because she could not take any more. Lee Haines, driver engineer, advised her to write down all instances she could, at that time remembered, and give it to her Battalion Chief who is the named Defendant Chris Davis. Although Defendant Chris Davis had been part of her harassment by not stopping it, and without any training or knowledge of where to go next, she did so.

52.   During that meeting Plaintiff expressed to Defendants Chris Davis and HFD her rejection, contempt, disapproval, and repulsion of Defendant Ryan Herrera's conduct and illegal treatment.

53.   From April 6-8th, 2021, Plaintiff had not received any update on her complaint, it was not even acknowledged. The union president Joseph Meyers then reached out to the Deputy Chief who is named Defendant Barry Young about her complaint as she is a union member. He said Defendant Chris Davis, her Battalion Chief, was supposed to be handling that investigation. He stated he would meet with Mr. Meyers on the 7th of April and meet with Plaintiff on April 8th. He did so, both were present on the 8th and the meeting was recorded on Defendant Barry Young's personal cellular phone. Defendant Barry Young asked Plaintiff if she would want to sit down and meet with Defendant Ryan Herrera, the individual who had harassed her, hazed her, made her working environment hostile, and sexually harassed her. Plaintiff declined.

54.   Plaintiff then asked Defendant Barry Young to move shifts as she continued to work under these individuals and she wanted to avoid retaliation. Defendant Barry Young said OK but she should work her last two shifts with both Defendant Chris Davis and

Defendant Ryan Herrera, just at a different station. During this meeting Defendant Barry Young said it was too bad this had happened he really thought she would be the first female officer at the Hobbs Fire Department, but she still could be. As of April 8th, 12 days (about 1 week 5 days) had passed since her original complaint.

55.   Plaintiff assumes upper management and commanding staff did not intend to let her advance in rank as these individuals were racist and did not like the fact that she had been with an African-American man prior.

56.   From April 9th-10th, 2021, Plaintiff worked her normal shifts at a different station. The second day peers and coworkers approached her to let her know both Defendant Ryan Herrera and Defendant Chris Davis were calling them into the office about her investigation. She was told not to talk about the investigation herself and felt further humiliated.

57.   While Plaintiff was working at the City of Hobbs Fire Department, Defendant Ryan Herrera was eventually appointed as her supervisor.

58.   On April 10th Defendant Ryan Herrera was put in charge of the entire shift as an acting Battalion Chief, as Defendant Chris Davis went home with an injury. It made Plaintiff extremely uncomfortable and she reached out to Mr. Meyers, who then contacted Defendant Barry Young and asked him why Defendant Ryan Herrera was her Battalion Chief when there is an ongoing investigation for sexual harassment, Defendant Barry Young advised Mr. Meyers to tell Plaintiff that they should not have any interaction unless there was a big incident. Defendant Barry Young also stated if she felt uncomfortable, she could go home. He also said former Chief Manny Gómez was

advised of the situation and Defendant Chris Davis was finishing his investigation (now twelve [12] days after the original complaint).

59.     Defendants HFD, Chris Davis, and Barry Young acknowledged Plaintiff's complaint by placing Defendant Ryan Herrera in a position of authority directly in charge of Plaintiff.

60.     Defendant Ryan Herrera was placed in the perfect place to continue with his sexual harassment, as it was provided by the Defendants HFD, City of Hobbs, and Barry Young.

61.     Defendants Ryan Herrera and Barry Young created a hostile environment at the workplace. Plaintiff and Mr. Meyers requested on numerous occasions for Defendant Barry Young to take action and do something about Defendant Ryan Herrera's sexual harassment, but he failed to act accordingly.

62.     On April 14, 2021 Adrian Enriquez, a firefighter, took a ride in Engine 513 with Mr. Meyers, at which time he made the following statements "I hear you're a no-nonsense union president, but you shouldn't run to Barry Young with every little thing. We know you can do your job without telling supervisors about everything". He also brought up the current complaint (which he should not have had any knowledge of) stating, "Ryan Herrera is a great leader and Caitlyn Schultze should watch who she tells her personal life to". The entire conversation was uncomfortable for Mr. Meyers.

63.     On April 15, 2021, Defendant Ryan Herrera remains acting Battalion Chief for his shift it is also noted that he is related to the former Chief Manny Gomez.

64.   On April 19, 2021, Defendant Barry Young contacted Mr. Meyers for his statement on harassment that he had personally witnessed. The statement was to be about the sexual harassment he witnessed.

65.   As of April 19, 2021, no one from Defendant HFD has given Plaintiff an update on her complaint, her peers have been contacted, multiple rumors and intimidation tactics are now being used, she has never heard from Human Resources, and she has had to find a new home thus draining her savings.

66.   On April 22, 2021, Plaintiff moved out of her rented space into a new apartment.

67.   On April 23, 2021, Plaintiff inquired and still no word on the complaint lodged.

68.   On April 26, 2021, a meeting was called with Defendant Barry Young, Plaintiff, Mr. Meyers, and Tracy South. Tracy South is the Assistant Human Resources Director the Defendant City. The meeting was recorded on a recorder owned by the Defendant City. At this meeting Defendant Barry Young stated he found no wrongdoing.

69.   At this time retaliation was reported in regard to Plaintiff having to leave her home, that Mr. Meyers statement had not been given to Human Resources.

70.   Later that day, a text was sent out by Michael Nelson, a Captain, to ask if anyone would donate to help Plaintiff get furniture for her new apartment. Mark Doporto, a firefighter, responded "Count me out". Michael Nelson should have that text. Again, the complaint was not to be discussed and yet several people knew.

71.   On April 27, 2021, Joseph Meyers went to Defendant City Human Resources Department to personally turn his statement in, at that time he was told they just received it from Defendant Barry Young. Also, on this day Defendant Barry Young

called to inform Mr. Meyers that he was going out of town and would deal with it when he got back. He never called Plaintiff and asked Mr. Meyers to relay this, he did so.

72. Defendant Barry Young in an attempt to delay, impede, or dismiss the investigation of the sexual harassment complaint did not immediately produce the statement made by Mr. Meyers to the City of Hobbs, which was reprisal for having filed a sexual harassment complaint.

73. On April 30, 2021 Plaintiff, accompanied by Mr. Meyers was called to Hobbs City Hall. At this time Tracy South and Defendant Barry Young again had found no wrongdoing. They did state that Defendant Ryan Herrera would be punished but would not disclose the punishment. He said the investigation is now closed. Defendant City Human Resources Department never called Mr. Meyers or Plaintiff in for any interview. At this time, it was asked about having a third-party investigation and an investigation into the retaliation. No direction was given on either request.

74. Plaintiff openly stated to Defendant HFD and Union President Mr. Meyers and Defendant Barry Young that she did not like Defendant Ryan Herrera's behavior towards her, nor the environment created at the Defendant HFD stations, among other things. Defendant Ryan Herrera created a hostile, offensive, intimidating, and sexually harassing environment in the Defendant HFD workplace.

75. Because of the constant bullying and hostile work environment, sexual harassment, and unwanted harassment, Plaintiff finally terminated her employment because she could not take it anymore and there was no protection provided by management.

76. Neither Defendant HFD, nor any of the other Defendants took action against Defendant Ryan Herrera for the sexual harassment that he will fully committed in the workplace.

77.  Defendant Ryan Herrera fully and willfully intended to harm Plaintiff.

78.  As a result of the continual obscene, derogatory remarks, gestures and sexually suggestive comments, Defendant Captain Herrera and Defendant Chris Davis created an environment so hostile and offensive that Plaintiff was in mental and emotional distress.

79.  Defendant Barry Young fully and willfully intended to harm Plaintiff by these actions.

80.  The actions described above taken by the Defendants were deliberate, intentional, and malicious and undertaken with reckless disregard for the civil rights of Plaintiff, and Plaintiff is entitled to punitive damages.

81.  Plaintiff was discriminated against based on gender and/or sex and was sexually harassed by her male supervisors Defendants Ryan Herrera and Chris Davis. Plaintiff was never in a discrimination-free environment because Defendant HFD and Defendant City never took appropriate action to stop the sexual harassment. Defendant HFD and Defendant City, did not create a discrimination free workplace, nor promote it, nor have any kind of propaganda or advertisement against any discrimination-free environment.

82.  Plaintiff needed the job to pay for expenses, shelter, transportation, financial obligations, and responsibilities.

83.  Plaintiff suffered emotional damage and Plaintiff was angry and sad because she had to go to work in a hostile environment full of sexual content and she did it because she needed the job to afford her financial obligations. Plaintiff was disappointed with the lack of action of the Defendants to provide a discrimination-free environment. Plaintiff was mad and sad among other feelings because she was felt discriminated against at

her workplace by a coworker in a position of authority. Instead of providing a discrimination-free environment for Plaintiff, Defendants HFD, City, and Barry Young found no wrongdoing and protected Defendant Ryan Herrera.

84.   The action taken by the Defendants against the Plaintiff caused her economical and emotional damage.

85.   As a direct and proximate result of these illegal, unlawful, and unwanted activities, Plaintiff incurred severe mental injury, pain, and suffering, which required treatment, and caused lasting damage.

86.   By committing the acts listed above, Defendant Ryan Herrera acted with intent and malice, without justification, and without provocation by Plaintiff. Despite overwhelming public policy prohibiting sexual-harassment, Defendant Ryan Herrera continually harassed Plaintiff, and made sexually suggestive remarks. When Plaintiff complained about this treatment, she suffered negative consequences.

87.   Defendants' failure to prevent and/or stop the harassment described herein compounded and exacerbated the physical and emotional injuries that Plaintiff was already suffering as a result of the unlawful conduct described above.

88.   As a proximate result of Defendants' conduct as described fully above, Plaintiff suffered economic damages, including lost earnings; noneconomic damages, including, without limitation, physical pain, humiliation, embarrassment, and discomfort; as well as mental and emotional distress and anguish, all to Plaintiff's damages in an amount to be proven at trial.

89.   Defendant HFD and/or Defendant City, authorized and ratified the above in the following ways:

(a)     Defendant HFD, City, and Defendant Barry Young implemented no policy regarding the reporting and handling of sexual harassment complaints. When Plaintiff and other employees attempted to complain, there was no avenue through which to voice their concerns or complaints; and when Plaintiff complained, she would be further abused by Defendants Barry Young, Ryan Herrera, and Chris Davis.  Defendants Chris Davis and Barry Young were well aware of Defendant Ryan Herrera's mistreatment of employees like that of Plaintiff and took no measures to protect said employees.

(b)     Defendant HFD and/or Defendant Barry Young made no attempt to redress Plaintiff's grievances and correct the problem and the behavior of Defendant Ryan Herrera was permitted to persist unchecked even after it was specifically brought to their attention.

90.    Defendant HFD and/or Defendant City of Hobbs are vicariously liable for the above-described intentional torts by their agents, Defendant Ryan Herrera and Barry Young, which were committed within the scope of employment.

<u>**COUNT I**</u>
<u>**TITLE VII DISCRIMINATION 42 U.S.C. §§ 2000E-2, 2000E-3**</u>

91.    Plaintiff incorporates the preceding allegations by reference.

92.    The discrimination of Plaintiff, by the Defendants, as set forth above, is in violation of Title VII of the Civil Rights Act of 1964 and 1991.

93.    42 U.S.C. §§ 2000 E-2 prohibits unlawful employment practices, where it shall be an unlawful employment practice for an employer:

(1) To fail or refuse to hire or to charge any individual, or otherwise to discriminate against any individual with respect to his/her compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or

(2) To limit, segregate, or classify employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his/her status as an employee, because of such individual's race, color, religion, sex, or national origin. 42 U.S.C. §§ 2000E-2.

## COUNT II
## HOSTILE WORK ENVIRONMENT AND SEX DISCRIMINATION

94.     Plaintiff incorporates the preceding allegations by reference.

95.     The Plaintiff's hostile work environment created by the Defendants, as set forth above, is in violation of Title VII of the Civil Rights Act of 1964 and 1991.

96.     During the course of her employment by Defendants, Plaintiff was subjected to pervasive acts of sexual harassment which included, but were not limited to, a verbal conduct of sexual nature, all of which Plaintiff did not welcome.

97.     The acts referenced in the preceding paragraph were perpetrated by Plaintiff's supervisor and others, which acts Plaintiff rebuffed and opposed.

98.     Plaintiff complained about the sexual comments and other behavior of a sexual nature to three individuals in managerial positions.

99.     Unwelcome and pervasive sexual behavior toward Plaintiff, and the inadequacy of Defendants' response thereto, had the purpose and effect of unreasonably interfering with Plaintiff's work performance and/or creating an abusive, intimidating, hostile and offensive work environment, which directly affected the terms, conditions, and privileges of Plaintiff's employment and violated her statutory rights to be free from discrimination on the basis of sex.

100.   Defendants failed to take adequate measures to prevent, investigate, and/or eradicate sexual harassment in Plaintiff's workplace.

101.   Defendants failed to take adequate steps to stop the behavior, and failed to take any measures designed to promptly prevent and remediate acts of sexual harassment, both before and after, and/or as a result of any of the incidents alleged herein.

102.   Defendants' failure to prevent, eradicate, and promptly remediate sexual harassment amounted to a condonation and ratification of sexual behavior and Defendants' omissions perpetuated an abusive and hostile work environment.

103.   By creating, condoning, and perpetuating a sexually hostile work environment, Defendants have intentionally and with reckless indifference violated Plaintiff's rights under Title VII and the New Mexico Human Rights Act, thereby justifying an award of punitive damages.

104.   Defendants' condonation, ratification, tacit approval, and perpetuation of sexual behavior has caused Plaintiff to suffer severe humiliation, embarrassment, degradation, and emotional and physical distress, as well as economic losses.

105.   Plaintiff further alleges that the acts of Defendants, through their employees and agents, singularly or in combination, constitute sexual harassment, discriminatory and disparate treatment of Plaintiff, as a consequence of her gender.

## COUNT III
## RETALIATION UNDER TITLE VII

106.   Plaintiff incorporates and restates each of the above paragraphs as it is fully set forth herein.

107.   Title VII, 42 U.S.C. §§ 2000 E-2, specifically states that it shall be an unlawful employment practice for an employer to discriminate against any of its employees...

because [the employee] has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

108.   In order to make out a prima facie case of retaliation… the employee must prove that (1) they engaged in protected conduct under Title VII; (2) she suffered an adverse employment action; and (3) the adverse action was causally connected to the protected activity. _Marrero v. Goya of Puerto Rico, Inc.,_ 304 F.3d 7,22 (1st Cir. 2002) _(citing Hernandez-Torres v. Intercontinental Trading, Inc.,_ 158 F.3d 43, 47 (1st Cir. 1998). "An employee has engaged in activity protected by Title VII if they have either; (1) opposed any practice made an unlawful employment practice by Title VII or; (2) made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under Title VII. _Long v. Eastfield College,_ 88 F.3d 300, 304 (5th Cir. 1996) (quoting 42 U.S.C. §§ 2000 E-2(a)). To establish the first of these elements' participation in a protected activity the individual need not prove that the conditions against which [s]he protested amounted to a violation of Title VII. _Wimmer v. Suffolk County Police Dept.,_ 176 F. 3d 125, 134 (2nd Cir. 1999), cert. denied, 528 U.S. 964, 120 S. Ct. 398, 145 L. 2d 310 (1999) (quoting _Manoharan, M.D., v. Columbia University College of Physicians & Surgeons_, 842 F. 2d 590, 594 (2nd Cir. 1988). The employee must demonstrate only that [She] had a good faith, reasonable belief that the underlying challenged actions of the employer violated the law. Id. The term protected activity refers to action taken to protest or oppose statutorily prohibited discrimination. _Cruz v. Coach Stores Inc._, 202 F. 3d 560, 566 (2nd Cir. 2000) (citing 42 U.S.C. §§ 2000

20

E-3 and Wimmer, 176 F. 3d at 134-135); _see also Sumner v. U.S. Postal Service_, 899

F. 2d 203, 209 (2nd Cir. 1990).

109.    In addition to protecting the filing of formal charges of discrimination, § 704(a)'s

opposition clause protests of discriminatory employment practices, including making

complaints to management, writing critical letters to customers, protesting against

discrimination by industry or by society in general, and expressing support of co-

workers who have filed formal charges.) _Fantini v. Salem State College_, 557 F.3d 22,

31-32, 2009 U.S. App. LEXIS 3508, 21-23, 105 Fair Empl. Prac. Cas. (BNA) 961, 92

Empl. Prac. Dec. (CCH) P43, 480 (1st Cir. Mass 2009)

**WHEREFORE**, Plaintiff Caitlin Schultze prays for judgment against all the Defendants

as follows:

a.    For reasonable compensatory damages in the amount of seven hundred and

fifty thousand dollars ($750,000);

b.    For punitive damages in the amount of two hundred fifty thousand dollars

($250,000.00);

c.    For prejudgment and post-judgment interest;

d.    Attorney's fees, tax, and costs pursuant to 42 U.S.C. §§ 1981, 1988 and the

Civil Rights Act of 1991§ 102; and

e.    For the cost of this action, and for such other and further relief that the Court

deems just and proper.

Respectfully submitted,

ZEBAS LAW FIRM, L.L.C.

By:  *Joseph M. Zebas*
Joseph M. Zebas, Esq.
502 West Alto Drive
Hobbs, NM 88240
T: (575) 393-1024
F: (575) 393-1234
joe.zebas@zebaslaw.com
*Attorney for Plaintiff*